■ Mohammed Kawoya, Respondent, v Pet Pantry Warehouse, Inc., et al., Appellants, et al., Defendant. [771 NYS2d 86]—

Order of the Appellate Term of the Supreme Court, First Department, entered April 15, 2002, which, in an action alleging an unlawful lockout and destruction of personal property, reversed so much of an order of the Civil Court, New York County (Eileen Rakower, J.), entered October 31, 2001, as granted defendants-appellants' motion for summary judgment dismissing the complaint as against them, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint as against them.

Plaintiff, a New York resident, was employed as a stockperson by defendants Pet Pantry Warehouse, Inc. and Pet Pantry Super Discount Stores, LLP (hereinafter jointly Pet Pantry), a Connecticut corporation, at their Greenwich, Connecticut location. Defendant Douglas Staley (Staley), Pet Pantry's chief operating officer, proposed that plaintiff move into his private Connecticut

apartment with his nephew in exchange for $600 per month, payable to Staley, in order to alleviate plaintiff's daily commute from New York City to Greenwich, as well as to offset Staley's costs in maintaining an apartment he vacated following his marriage. Plaintiff alleges that shortly after he notified Pet Pantry that he intended to seek medical coverage for an on-the-job back injury, he was locked out of the apartment by Staley and his nephew and that his personal property was destroyed in retaliation.

Pet Pantry subsequently moved for summary judgment, contending, inter alia, that the subject apartment was wholly owned by Staley, who was not a partner of Pet Pantry, and that Staley's decision to rent his private residence to plaintiff and the alleged destruction of plaintiff's personal property were not within Staley's duties or responsibilities as an employee of Pet Pantry. By order entered on October 31, 2001, the Civil Court, inter alia, granted the motion and dismissed the complaint against Pet Pantry, finding that it: (1) was not a party to the oral rental agreement between plaintiff and Staley; (2) did not have control over the subject premises; and (3) was not responsible for the alleged lockout or subsequent property loss. The Appellate Term reversed and denied Pet Pantry's motion for summary relief, finding, inter alia, questions of fact as to whether Staley's actions were within the scope of his employment or in furtherance of Pet Pantry's business under the doctrine of respondeat superior. This Court granted Pet Pantry leave to appeal and we now reverse.

It is well settled that under the doctrine of respondeat superior, "[a]n employer may be held vicariously liable for the tortious acts of its employee only if those acts were committed in furtherance of the employer's business and within the scope of employment" (*N.X. v Cabrini Med. Ctr.*, 280 AD2d 34, 37 [2001], *affd as mod* 97 NY2d 247 [2002]). However, " 'where an employee's conduct is brought on by a matter wholly personal in nature, the source of which is not job related, his actions cannot be said to fall within the scope of his employment' " (*Davis v City of New York*, 226 AD2d 271, 272 [1996], *lv denied* 88 NY2d 815 [1996], quoting *Stavitz v City of New York*, 98 AD2d 529, 531 [1984]).

In the instant matter, we find no question that Staley's actions in renting his private residence to plaintiff and the alleged subsequent destruction of plaintiff's personal property were personal in nature and not within the scope of his employment with Pet Pantry. After a careful review of the record, it is clear that Staley took in his nephew and plaintiff as tenants primar-

ily to collect rent to pay off his private apartment's maintenance charges and mortgage after Staley vacated the premises following his marriage. The landlord-tenant relationship between Staley and plaintiff was primarily in furtherance of Staley's personal financial situation, rather than advancing the business of Pet Pantry. Indeed, Staley himself brokered the agreement with plaintiff without the consent of Pet Pantry and collected the $600 monthly rental for his own use. We further find no indication in the record that Staley's private residence was utilized as a "company apartment" for the benefit of Pet Pantry or that Pet Pantry exercised any control, either directly or indirectly, over Staley's apartment.

We have considered the plaintiff's remaining contentions and find them unavailing. Concur—Andrias, J.P., Ellerin and Lerner, JJ.

Williams and Gonzalez, JJ., dissent in a memorandum by Williams, J., as follows: I would affirm the order of the Appellate Term.

The contention of the Pet Pantry defendants, that defendant Staley, their chief operating officer, was not acting within the scope of his employment when, as plaintiff alleges, he unlawfully locked plaintiff out of the apartment that he rented to plaintiff and then destroyed plaintiff's personal property, is not sufficiently supported to warrant a grant of summary judgment. Indeed, the evidence arguably shows that Staley utilized the apartment in question as a company apartment, i.e., to house Pet Pantry employees so as to place them more readily at their employer's disposal, and that Staley's alleged wrongful conduct was precipitated by plaintiff's termination as a Pet Pantry employee shortly after he notified Pet Pantry that he would seek medical coverage for the on-the-job back injury he sustained. Consequently, issues of fact are raised as to whether the complained-of acts attributed to Staley were performed to further the interests of the Pet Pantry defendants and within the scope of Staley's employment (*see Riviello v Waldron*, 47 NY2d 297, 302-303 [1979]). [*See* 2002 NY Slip Op 50133 (U).]